**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

**NORTH TEXAS EQUAL ACCESS FUND**,
on behalf of itself and its staff, its volunteers,
and its donors,

      P.O. Box 227336
      Dallas, Texas 75222

**LILITH FUND FOR REPRODUCTIVE
EQUITY**, on behalf of itself and its staff, its
volunteers, and its donors,

      P.O. Box 684949
      Austin, Texas 78768

      Plaintiffs,

v.

**AMERICA FIRST LEGAL FOUNDATION**,
      300 Independence Avenue, S.E.
      Washington, D.C. 20003

      c/o CT Corporation System
      1015 15th Street, N.W., Suite 1000
      Washington, D.C. 20005

      Defendant

Civil Case No. 1:22-cv-00728

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    Plaintiffs North Texas Equal Access Fund ("TEA Fund") and Lilith Fund for

Reproductive Equity ("Lilith Fund" and together with TEA Fund, "Plaintiffs") are abortion funds

headquartered and operating in Texas.  Their mission is to foster reproductive justice.  In support

of that mission, they provide financial, emotional, and logistical support for abortion patients all

over Texas.  Their support includes work helping pregnant Texans access care within the state and

accessing abortion services outside of Texas when needed.  Plaintiffs bring this lawsuit to obtain

declaratory and injunctive relief against Defendant America First Legal Foundation ("AFLF").

AFLF has threatened to file, is presently conspiring and coordinating with others to file, and has

improperly initiated court proceedings to obtain information to be used in lawsuits against

Plaintiffs to enforce a Texas anti-abortion law, Senate Bill 8, 87th Leg., Reg. Sess., popularly

called the "Texas Heartbeat Act"[1] ("SB8").

    2.    SB8 was passed by the Texas Legislature in May 2021.  The law does not

criminalize abortion—which obviously would be unconstitutional—but instead subjects anyone

who helps a pregnant person ("helper") to obtain an abortion in violation of SB8's provisions to

expansive liability.  Specifically, the helper is subjected to strict liability for (1) at least $10,000

for providing assistance to a person in need of an abortion; and (2) an award of attorneys' fees to

the claimant under SB8.  Additionally, upon entry of judgment against the helper, they also are

subject to a mandatory injunction to prevent future violations of the law.  Therefore, SB8 provides

claimants with a windfall when they have suffered no injury whatsoever, based on the dubious

legal premise that one can be policed by private citizens for helping a person exercise a

constitutional right, and that helpers can be punished by their "neighbors" for doing nothing more

than offering a ride, money, or even just offering information.  Ironically, those neighbors can be

anywhere in the country, not just in Texas.  SB8 is an unconstitutional overreach that makes bounty

---

[1] SB8 defines "fetal heartbeat" as "cardiac activity or the steady and repetitive rhythmic contraction of the fetal heart within the gestational sac." Tex. Health & Safety Code Ann. § 171.201(1).  In a typically developing pregnancy, ultrasound can generally detect cardiac activity beginning at approximately six weeks of pregnancy, as measured from the first day of a patient's last menstrual period.  The cells that produce early cardiac activity, however, have not yet formed a "heart."  The term "heartbeat" in SB8 thus covers not just a "heartbeat" in the lay sense, but also early cardiac activity—more accurately, electrical impulses—present before full development of the cardiovascular system.  Neither "fetal" nor "heartbeat" is accurate medical terminology at this early stage of pregnancy.  Plaintiffs therefore refer to "cardiac activity" throughout this Complaint.

hunters out of private partisans.  And in attempting to subvert one constitutional right, SB8 violates several others.

3.      SB8  has already been declared void under Texas law.  On December 9, 2021, the Honorable David Peeples, sitting by assignment of the Texas Multi-District Litigation Panel, entered a declaratory judgment that SB8's private enforcement mechanism is unconstitutional under Texas law and "should not be enforced or applied in Texas courts" for three independent reasons:

> **VIII.   DECLARATORY JUDGMENT**
>
> This court declares that TEXAS HEALTH & SAFETY CODE § 171.208 (a) & (b) is unconstitutional, and should not be enforced or applied in Texas courts, for the following three separate and independent reasons:
>
> A. **Standing for uninjured persons.** SB 8's grant of standing to "any person" to be awarded "no less than $10,000" and a mandatory injunction without showing harm to himself, taken from a person who has not harmed him, violates the Texas Constitution's "open courts" provision and is unconstitutional.
>
> B. **Punishment without due process.** SB 8's mandate that trial courts "shall" award "no less than $10,000" to an unharmed claimant from a defendant who did him no harm is punishment and not compensation that will deprive persons of property without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.
>
> C. **Delegation of executive power to private persons.** SB 8's grant of enforcement power to "any person" is an unlawful delegation of power to private persons that violates the Texas Constitution's separation of powers provision and is unconstitutional.

4.      Despite Judge Peeples's decision, AFLF has publicly declared its intention to sue Plaintiffs under SB8, and to assist others in suing Plaintiffs under SB8.  In fact, AFLF has gone so far as to initiate pre-suit discovery proceedings in Texas aimed directly at Lilith Fund and TEA Fund to investigate potential claims under SB8.  The pre-suit discovery petitions seek, among other things, information about Plaintiffs' staff, volunteers, and donors.

5.      AFLF's invocation of, and intent to enforce, SB8 poses imminent and existential threats to the fundamental and constitutional rights of Plaintiffs, their staff, their volunteers, and

their donors.  This case is brought to vindicate those rights—rights that no state legislature has the power to undermine.  Plaintiffs rest their plea for relief on the principles that underlie the very idea of a written constitution.  "[W]here there is a legal right, there is also a legal remedy . . ." *Marbury v. Madison*, 5 U.S. 137, 163, 2 L. Ed. 60 (1803).  And where the right at issue is constitutional, there is no amount of legislative trickery, obfuscation, or wordplay that can subvert it:

> . . . all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and consequently the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void.  This theory is essentially attached to a written constitution, and is consequently to be considered, by this court, as one of the fundamental principles of our society.

*Id*. at 177.  When a legislative act and a constitutional right conflict, "it is emphatically the province and duty of the judicial department to say what the law is."  *Id*.

6.     Plaintiffs bring this lawsuit to protect themselves, their staff, their volunteers, and their donors from AFLF's unlawful attempts to intimidate Plaintiffs and prevent them from exercising their rights under the U.S. Constitution.[2]  They respectfully request that this Court provide them the remedies to which they are entitled, including: (1) a declaration that the private civil enforcement procedures of SB8 are unconstitutional, void, of no effect, and therefore not usable by AFLF or others; (2) a preliminary injunction preventing AFLF from filing any case against Plaintiffs under SB8, conspiring, coordinating, or assisting others with filing such a case, or seeking discovery related to such a case; and (3) a permanent injunction restraining AFLF and

---

[2] This case does not challenge the constitutionality of SB8's abortion restrictions themselves, although the courts have consistently held that a ban on abortion pre-viability is unconstitutional. This case is about the myriad of other federal constitutional rights that SB8's private enforcement mechanism vitiates for any person subject to SB8's provisions.

those working in concert with AFLF in the same manner as the preliminary injunction. In support of these requests, Plaintiffs respectfully show the Court as follows:

<u>**PARTIES**</u>

7.     Plaintiff TEA Fund is a nonprofit organization incorporated in Texas and based in Dallas.

8.     TEA Fund's claims are on behalf of itself and its staff, volunteers, and donors. TEA Fund has suffered a direct injury because: (a) it is being required to divert organizational resources to counteract AFLF's threats and the threats of civil liability created by SB8's invalid provisions; and (b) the organization's mission is being frustrated. TEA Fund is also presently suffering the imminent threat of additional direct injury because, with AFLF's assistance and, on information and belief, with AFLF's inducement, private individuals represented by AFLF are attempting to use pre-suit depositions to investigate TEA Fund (and others) for purported violations of SB8. AFLF also has publicly threatened to sue and obtain civil and criminal penalties against anyone who violates SB8. TEA Fund also has representational standing based on injuries to its staff, volunteers, and donors, because at least one of its staff, at least one of its volunteers, and at least one of its donors has standing, the interests at stake are germane to TEA Fund's purpose, and neither the claims nor the relief requested requires participation of the organization's individual staff, volunteers, or donors. As set forth below, SB8's structure and AFLF's public threats regarding enforcement show that, in addition to TEA Fund itself, its staff, volunteers, and donors are all likely targets of AFLF.

9.     Plaintiff Lilith Fund is a nonprofit organization incorporated in Texas and based in Austin.

10.     Lilith Fund's claims are on behalf of itself and its staff, volunteers, and donors.  As discussed in detail below, Lilith Fund has suffered a direct injury because: (a) it is being required to divert organizational resources to counteract AFLF's threats and the threats of civil liability created by SB8's invalid provisions; and (b) the organization's mission is being frustrated.  Lilith Fund is also presently suffering the imminent threat of additional direct injury because, with AFLF's assistance and, on information and belief, with AFLF's inducement, private individuals represented by AFLF are attempting to use pre-suit depositions to investigate Lilith Fund for violations of SB8, and AFLF has publicly threatened to sue and obtain civil and criminal penalties against anyone who violates SB8.  Lilith Fund also has representational standing based on injuries to its staff, volunteers, and donors because at least one of its staff, at least one of its volunteers, and at least one of its donors has standing, the interests at stake are germane to Lilith Fund's purpose, and neither the claims nor the relief requested requires participation of the organization's individual staff, volunteers, or donors.  As set forth below, SB8's structure and AFLF's threats regarding enforcement show that, in addition to Lilith Fund itself, its staff, volunteers, and donors are all likely targets of AFLF.

11.     Defendant AFLF is a 501(c)(3) nonprofit corporation formed under the laws of the State of Delaware, with its principal place of business and headquarters in Washington, D.C.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1343.

13.     This is a civil and constitutional rights action arising under 42 U.S.C. § 1983 and the United States Constitution.

14.     Separately and independently, this Court also has jurisdiction under 28 U.S.C. § 1332 because there is a complete diversity of citizenship among Plaintiffs and AFLF, and the value of the rights Plaintiffs are suing to protect—and the pecuniary injury they are suing to avoid— exceeds $75,000.

15.     This Court has general personal jurisdiction over AFLF because AFLF is a 501(c)(3) nonprofit organization formed under the laws of the State of Delaware, with its principal place of business and headquarters in Washington, D.C.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (b)(2), because this is the judicial district in which AFLF resides and because this is the judicial district in which AFLF's conduct giving rise to this action occurred.

17.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of the Court, including the Court's inherent authority to enforce the supremacy of federal law as against contrary state law.

## FACTS

### Senate Bill 8

18.     On May 19, 2021, Texas Governor Greg Abbott signed into law SB8. A copy of

the enrolled text of Senate Bill 8 is attached hereto as **Exhibit A**.[3]

19.     SB8 effectively bans abortion at approximately six weeks of pregnancy—not by criminalizing it, which would be a clear violation of the U.S. Constitution and nearly a half-century of binding authority from the U.S. Supreme Court—but by deputizing private citizens to "enforce" the law and allowing "any person" other than governmental officials to bring a civil lawsuit against anyone who provides an abortion in violation of SB8, "aids or abets" such an abortion, or even just *intends* to do these things.  Tex. Health & Safety Code Ann., §§ 171.208(a)(2)-(3).  These civil suits are permitted regardless of whether the person suing has any connection to the abortion or the person who sought it.[4]

20.     SB8 does not define "aiding and abetting" and therefore could reach any conduct or speech found to relate to an abortion.  SB8 specifically disclaims that aiders and abettors must have any knowledge that the law would be broken.[5]  Further, the statute applies to an individual who *intends* to speak or engage in any action that might be construed as assistance in obtaining an abortion.  Despite its vagueness, the statute makes clear that a person or entity that provides funds

---

[3] The majority of SB8's provisions at issue in this lawsuit are codified in Chapter 171 of the Texas Health and Safety Code.  The remaining challenged provisions are codified in Chapter 30 of the Texas Civil Practice and Remedies Code.  This Complaint refers to SB8's specific provisions by their codified locations.

[4] There is no exception to SB's purported prohibitions on abortion for a person who has been subjected to sexual assault or incest, although the statute's authors did see fit to exclude the rapist from those persons allowed to recover the $10,000 bounty (provided, presumably, that the victim was given the opportunity to demonstrate beyond a reasonable doubt, that they were indeed assaulted).  Since fewer than 10 percent of rapes are reported and fewer than 10 percent of reported rapes lead to a conviction, this "exception" is effectively meaningless, except as a cursory acknowledgment that rape should not be rewarded with money damages to an assailant.

[5] Liability under the statute attaches "regardless of whether the [alleged aider or abettor] knew or should have known that the abortion would be performed or induced in violation of this subchapter."  Tex. Health & Safety Code Ann. § 171.208(a)(2).

used to obtain an abortion is liable for "aiding and abetting" under SB8, and that person or entity does not even have to know the funds will be used that way in order to be liable.

21.     An SB8 claimant who prevails is entitled to (1) mandatory "injunctive relief sufficient to prevent" future violations without any showing that would typically be required for the imposition of injunctive relief; and (2) without any showing of harm, an award of "statutory damages" of *at least* $10,000 per violation, with no apparent maximum amount; and (3) costs and attorneys' fees.  Tex. Health & Safety Code Ann. § 171.208(b).  Therefore, SB8 places a bounty on people who provide, aid, fund, speak about, or indeed, even think about abortions, inviting random strangers to sue them throughout the state of Texas.

22.     Thus, SB8 creates countless pseudo "qui tam" plaintiffs who, unlike actual qui tam plaintiffs, are not acting on behalf of the State—the State itself is barred from enforcing SB8. Instead, SB8 plaintiffs are bounty-hunting litigants seeking a financial windfall at no risk to themselves.  An SB8 plaintiff is never responsible for attorneys' fees, and he gets to keep all the money he "earns" by bringing lawsuit after lawsuit against anyone he believes assists with abortions after cardiac activity is detected, with no benefit inuring to the State, and no opportunity for the State to intervene, to constrain his litigation, or to take it over.  Additionally, the SB8 plaintiff's counsel is virtually guaranteed to receive their attorneys' fees from the defendant, unless the defendant can prevail on every single part of the claim against them.

23.     SB8 purports to eliminate a variety of common law defenses that are available to other defendants.  Tex. Health & Safety Code Ann. § 171.208(e).  Further, if an SB8 defendant dares to affirmatively claim—by seeking declaratory or injunctive relief—that SB8 is unconstitutional, both the defendant and her counsel will be jointly and severally liable for the SB8 plaintiff's attorneys' fees, regardless of whether the SB8 plaintiff's claim has any merit.  *See* Tex.

Civ. Prac. & Rem. Code Ann. § 30.022(a).  This fee-shifting provision purports to benefit the "prevailing party," but the only party that can be liable for fees is the party seeking injunctive or declaratory relief *against* SB8 (or any other abortion-regulating law).  *Id.* at §§ 30.022(a)-(b). Therefore, even if the party seeking a declaration that the law is unconstitutional completely prevails, its only reward is that it becomes obligated to pay its *own* fees rather than the opposing party's fees.  *Id.*  This fee shifting provision even disclaims any *res judicata* effect that would ordinarily apply, thereby taking away the core power of all courts (including federal courts) to bindingly declare the rights of the parties before it:

> (c) Regardless of whether a prevailing party sought to recover costs or attorney's fees in the underlying action, a prevailing party under this section may bring a civil action to recover costs and attorney's fees against a person, including an entity, attorney, or law firm, that sought declaratory or injunctive relief described by Subsection (a) not later than the third anniversary of the date on which, as applicable:
> (1) the dismissal or judgment described by Subsection (b) becomes final on the conclusion of appellate review; or
> (2) the time for seeking appellate review expires.
>
> (d) **It is not a defense** to an action brought under Subsection (c) **that**:
> …
> (3) **the court in the underlying action held that any provisions of this section are invalid, unconstitutional, or preempted by federal law,** *notwithstanding the doctrines of issue or claim preclusion*.

*Id.* at §§ 30.022(c)-(d) (emphasis added).

24.     The transparent purpose of SB8's private enforcement scheme was to attempt to prevent anyone from suing government officials for an injunction to block the law before it took effect, as the Texas Solicitor General recently acknowledged to the Supreme Court of Texas.[6]  SB8

---

[6] The oral argument can be viewed publicly through the Texas Supreme Court's website, enabled by Texas Bar CLE.   The following link was active at the time of filing:

was purposefully designed to try to insulate it from judicial review by improperly delegating *all* enforcement to private litigants who have no connection whatsoever to any abortion at issue and by creating a unique and draconian set of court rules that make it impossible for SB8 defendants to meaningfully access the courts and defend themselves.  But the Texas legislature cannot confer standing where no injury exists; nor can it mandate that courts deprive citizens of their constitutional rights, based solely on the content of the claims or defenses they would bring.

25.   SB8 became effective on September 1, 2021, and the chilling effect imposed by self-declared private enforcers like AFLF has been devastating.  Nearly all of Plaintiffs' clients are at a point in pregnancy when cardiac activity can be detected, because many people do not even learn they are pregnant by that point.  As a result, with the exception of an approximately 48-hour period in October of 2021 (during which time the Honorable Robert Pitman of the U.S. District Court for the Western District of Texas enjoined all enforcement of SB8), virtually all of Plaintiffs' clients have had to obtain abortion services outside of Texas.  Plaintiffs have assisted their clients in those efforts, which has substantially increased the financial cost imposed on Plaintiffs for each client they assist.  In addition, since September 1, 2021, Plaintiffs have had to adjust their internal operations to try to comply with their understanding of SB8 (and even the potential

---

https://www.texasbarcle.com/cle/SCPlayer5.asp?sCaseNo=22-0033&bLive=&k=&T=.       The relevant comments of Solicitor General Stone begin around 17 minutes, 46 seconds of the linked video.  In that portion, the following exchange occurs:

Solicitor General Stone: "Well, the legislature clearly – first of all, as a matter of description about why the legislature did what it did, the point on restraining state actors from being able to take enforcement actions was specifically to preclude federal pre-enforcement challenges. That was the reason, both of those—"

Justice Lehrmann: "So you concede that."

Solicitor General Stone: "Of, of course. We said as much before the United States Supreme Court. That's been the position of the state the entire time."

*misunderstanding* of SB8 and constitutional law by would-be enforcers like Defendant), and they have faced the threat of ruinous civil liability simply for continuing to fulfill their missions.

26.     In addition to the increased funding and operational costs imposed by potential and threatened enforcement of SB8 by AFLF (and others), having to defend even a single SB8 lawsuit also exposes each Plaintiff to over $75,000 in financial risk because: (1) the statutory $10,000 penalty is a minimum, not a ceiling, it attaches to an unlimited number of defendants per abortion, and AFLF has made clear that it intends to sue Plaintiffs' staff, volunteers, and donors in connection with any prohibited abortion; (2) an injunction prohibiting Plaintiffs from continuing their operations would force a complete shutdown of their organizations; (3) the cost for Plaintiffs to retain their own lawyers to defend against an SB8 lawsuit likely would exceed $75,000; (4) a mandatory award of fees to the SB8 plaintiff also likely would exceed $75,000; and (5) the value of Plaintiffs' constitutional rights, including its free speech, due process, and equal protection rights, more than exceeds $75,000.

**Defendant AFLF**

27.     On January 26, 2022, Sadie Weldon, represented by lawyers affiliated with AFLF, among others, filed a petition (the "Weldon Petition") in the 271st Judicial District Court of Jack County, Texas under Rule 202 of the Texas Rules of Civil Procedure seeking a pre-suit investigatory deposition of Neesha Davé, Deputy Director, and former Acting Executive Director, of Lilith Fund.  On February 2, 2022, another litigant, Ashley Maxwell, also represented by lawyers affiliated with AFLF, among others, filed a similar petition (the "Maxwell Petition"), this one in the 431st Judicial District Court of Denton County, Texas, targeting Kamyon Conner, Executive Director of TEA Fund. The Weldon and Maxwell Petitions, collectively referred to as the "Rule 202 Petitions," are attached as **Exhibits B** and **C** to this Complaint.

28.     The Rule 202 Petitions represent clear threats of imminent SB8 enforcement lawsuits that are attributable not only to the petitioners in those actions, but also to AFLF.

29.     Each Rule 202 Petition seeks to investigate "potential claims … under section 171.208 of the Texas Health and Safety Code," which is the civil suit provision of Senate Bill 8. Ex. B at 1; Ex. C at 1.

30.     Each Rule 202 Petition was filed to "investigate the possibilities for future civil actions brought under section 171.208 of the Texas Health and Safety Code, against individuals and organizations that performed or aided or abetted abortions in violation of the Texas Heartbeat Act, also known as Senate Bill 8 or SB 8."  Ex. B at 1; Ex. C at 1.

31.     Each Rule 202 Petition bases its request for a pre-suit investigatory deposition on testimony given in the Texas Heartbeat Act Multi-District Litigation pretrial court[7] by Davé and Conner that, after an initial injunction was issued against the enforcement of SB8 by Judge Pitman on October 6, 2021, Lilith Fund and TEA Fund assisted in funding at least one post-cardiac-activity abortion.  Ex. B at 10; Ex. C at 10.

32.     Each Rule 202 Petition seeks "all non-privileged documents" related to each Plaintiff's "role in  supporting, funding, and facilitating abortions provided in violation of the Texas Heartbeat Act [SB 8]; the identify of all individuals or entities that the [Plaintiff] collaborated with in providing these illegal abortions; the number of post-heartbeat abortions provided in Texas since September 1, 2021; and the sources of financial support for Plaintiffs' abortion-assistance activities."  Ex. B at 9; Ex. C at 9.

---

[7] *In re Texas Heartbeat Act Litigation MDL* cases, *Van Stean v. Texas Right to Life, et al.*, Cause No. D-1-GN-21-004179, presently pending before the Honorable Judge David Peeples (the "Texas MDL Matter").

33.     Each Petition has, in its signature block, a full entry for Gene P. Hamilton, Vice President and General Counsel for AFLF. Ex. B at 10; Ex. C at 10.

34.     AFLF has taken direct responsibility for the filing of both the Maxwell and the Weldon Petitions.

35.     On February 14, 2022, AFLF published a press release on its website that read as follows:

> Last week, AFL served papers on Neesha Davé, the Deputy Director of the Lilith Fund for Reproductive Equity, and Kamyon Conner, the Executive Director of the Texas Equal Access Fund, after each of them admitted in court that their organizations had paid for an abortion of an unborn child that had a detectable heartbeat.
>
> The Texas Heartbeat Act imposes civil liability on any person who aids or abets an abortion performed after fetal heartbeat, and anyone found to have assisted a post-heartbeat abortion must pay at least $10,000 in statutory damages plus costs and attorneys' fees.  It is also a criminal offense in Texas to "furnish the means for procuring an abortion knowing the purpose intended" unless the mother's life is in danger, and anyone convicted of paying for another's abortion faces two to five years imprisonment for each abortion that they funded.
>
> America First Legal is seeking to take depositions of Davé and Conner to determine which individuals are subject to civil liability and criminal prosecution for paying for these illegal abortions, which will include employees, volunteers, and donors of the Lilith Fund and the Texas Equal Access Fund.

A PDF copy of this press release, which also links to both the Maxwell and Weldon Petitions, is attached to this Complaint as **Exhibit D**.[8]

---

[8] The press release can be viewed at the AFLF's website at: https://www.aflegal.org/news/afl-files-petitions-against-two-abortion-funds-in-texas-who-violated-the-texas-heartbeat-act  (last  visited March 10, 2022).

36.     AFLF republished the press release on Facebook on March 2, 2022.  A copy of that post is attached to this Complaint as **Exhibit E**.[9] The post, when clicked, linked directly to the press release.

37.     AFLF also republished the press release on Twitter on March 2, 2022.  A copy of that tweet is attached to this Complaint as **Exhibit F**.[10] The tweet contained a link that, when clicked, linked directly to the press release.

38.     The Texas Tribune published an article on February 23, 2022, reporting on the Maxwell and Weldon Petitions, and also reporting on AFLF's involvement.  A copy of that article is attached to this Complaint as **Exhibit G**.[11]  The article specifically notes that AFLF is involved in the matter, representing the petitioners.

39.     AFLF republished the Texas Tribune article, proudly stating that it was "in the news" on its Facebook account via a February 24, 2022 post.  A copy of that post is attached to this Complaint as **Exhibit H**.[12]

40.     AFLF has also publicly identified itself as directly involved in litigation regarding SB8, as demonstrated by the February 28, 2022 tweets reproduced in **Exhibit I**,[13] in which AFLF twice retweeted a post by Texas Attorney General Paxton and took credit for helping to defend SB8 in other litigation.

---

[9]  This post is still viewable of AFLF's timeline at its official Facebook page: https://www.facebook.com/americafirstlegal
[10]  This tweet could be viewed at the following location at the time of filing: https://twitter.com/America1stLegal/status/1499099364387602434
[11]      This article is available on the Texas Tribune website at https://www.texastribune.org/2022/02/23/texas-abortion-sb8-lawsuits/
[12]  This post is still viewable of AFLF's timeline at its official Facebook page: https://www.facebook.com/americafirstlegal
[13]  These Tweets can still be viewed on AFLF's Twitter timeline at https://twitter.com/America1stLegal.

41.     AFLF also appeared for Texas Right to Life and its legislative director John Seago in the early stages of the Texas MDL Matter.  As that case progressed, Seago and Texas Right to Life were enjoined from suing TEA Fund and Lilith Fund (among others) under SB8, and from conspiring with others to do so, as were their attorneys.  That temporary injunction remains in effect.  Further, on December 9, 2021, Judge Peeples granted a declaratory judgment and found that key provisions of SB8, including the private civil enforcement mechanism, are unconstitutional under the Texas Constitution and also violate federal due process.  A copy of the injunction against Texas Right to Life and John Seago is attached to this Complaint as **Exhibit J**. A copy of Judge Peeples's order granting declaratory judgment is attached to this Complaint as **Exhibit K**.

42.     Nonetheless, AFLF boldly flouts the injunction and Judge Peeples's declaratory judgment.  AFLF maintains that it will continue in its efforts to enforce SB8, and that it will do so specifically against Plaintiffs.

43.     AFLF is acting under color of state law because the Texas Legislature deputized them as enforcers of SB8.  The Texas Supreme Court held on March 9, 2022 that the only people empowered by the State to enforce SB8 are private actors like Defendant.[14]  Because the Texas Legislature purposefully delegated all of the State's enforcement power for SB8—which resides in the Texas Executive Branch—private actors like Defendant who seek to enforce SB8 do so under color of law.

---

[14] *Whole Woman's Health v. Jackson*, No. 22-0033, 2022 WL 726990 (Tex. Mar. 11, 2022).

**Plaintiffs TEA Fund and Lilith Fund**

44.     Plaintiff TEA Fund's mission is to foster reproductive justice.  It provides financial, emotional, and logistical support for abortion patients in north Texas.  Almost all of its clients are at a point in pregnancy when cardiac activity can be detected.

45.     Plaintiff Lilith Fund's mission is to foster reproductive justice.  Lilith Fund provides financial, emotional, and logistical support for abortion patients in Central Texas.  Almost all of its clients are at a point in pregnancy when cardiac activity can be detected.

46.     Plaintiffs have previously funded and will continue to provide funding to support reproductive healthcare, abortions, and people who seek abortions, although they have changed their operations to attempt to comply with SB8 despite its unconstitutional provisions.

47.     Plaintiffs openly communicate with the public regarding abortion, voicing support for abortion rights, advocating for reproductive freedom and reproductive justice, and seeking the support of others who share the same values.

48.     Plaintiffs engaged in conduct prior to its enactment that helped to facilitate the performance of an abortion that would have violated SB8's terms.

49.     SB8 and its enforcers, like AFLF, interfere with Plaintiffs' ability to provide assistance to people seeking an abortion.

50.     SB8 also seeks to prohibit Plaintiffs from asserting that the provisions of SB8 are themselves unconstitutional restrictions on their rights.

51.     Plaintiffs are presently being targeted by AFLF for lawsuits under SB8, wherein Plaintiffs' ability to defend themselves and their staff, volunteers, and donors both factually and legally are impaired by SB8's civil enforcement mechanism provisions, including but not limited to those relating to unconstitutional burden-shifting, fee awards, joint and several liability of counsel, and elimination of defenses.

52.     Plaintiffs' rights (along with the rights of their staffs, volunteers, and donors) to freely speak, associate, petition, work, and access the courts are substantially burdened by SB8 and AFLF's public and ongoing threats to enforce SB8 against Plaintiffs.

53.     SB8 and Defendant target Plaintiffs and intend specifically to silence them, their staff, their volunteers, their donors, and others like them on the basis of the content of their speech and a specific and content-based aspect of their philanthropic funding work—assisting pregnant people in need of an abortion.  Plaintiffs' rights were immediately violated upon SB8's effective date of September 1, 2021, and the threat of unmitigated potential civil liability to Plaintiffs is imminent because citizen bounty hunters like AFLF and those with whom AFLF is presently working are publicly organizing to file lawsuits under SB8.  In fact, they have already initiated court proceedings to investigate Plaintiffs, and their staff, volunteers, and donors for SB8 lawsuits. *See* Ex. B through Ex. I.

## CLAIMS FOR RELIEF

**Claim I:**          **SB8, And AFLF's Threats Of Enforcement, Violate Plaintiffs' Constitutional Due Process Rights.**

54.     The allegations in paragraphs 1 through 53 above are incorporated as if fully set forth herein.

55.     The Fourteenth Amendment to the U.S. Constitution provides that no State may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

56.     SB8 infringes upon Plaintiffs' constitutionally secured rights, such as freedom of speech, freedom to assemble, freedom of association, equal protection, and the right to openly access the courts, as well as the other rights described herein.

57.     SB8's purpose is not rationally related to any legitimate governmental interest.

58.     Further, SB8's effect is not rationally related to a governmental interest or is so burdensome as to be oppressive to the above delineated rights.

59.     SB8 violates Plaintiffs' due process rights, prior to SB8's effective date as well as after.

60.     In addition, SB8, and Defendant's conduct, deprives Plaintiffs of their right to due process in each of the following ways:

> **(i)     SB8, and AFLF's threats, violate Plaintiffs' due process rights by effectively denying them access to fair and impartial courts.**

61.     The right of access to the courts is a fundamental right guaranteed by the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, and is especially protected by the due process clauses of the Fifth and Fourteenth Amendments.

62.     The following provisions of SB8, individually and collectively, so dramatically reconfigure the general risks of litigation and so thoroughly rig the game in favor of one side as to deny Plaintiffs, or those in their position, meaningful access to fair and impartial justice in the judicial system, thereby violating the Constitution:

    a.  Section 171.208(b)'s provision for mandatory minimum (and no maximum) relief for a prevailing claimant, regardless of proved damages;

    b.  Section 171.208(b)'s provision for mandatory injunctive relief for a prevailing claimant regardless of any demonstration of need for injunctive relief;

    c.  Section 171.208(e)'s elimination of applicable defenses for potential defendants;

    d.  Section 171.208(i)'s prohibition of an award of fees to a prevailing defendant, thereby ensuring that in an offensive SB8 case, even the most frivolous case, can be brought without risk; and

e.   Section 30.022's imposition of joint and several liability for attorneys' fees on litigants and attorneys/firms that take on challenges to abortion laws and its attempt to allow other, later courts to assess fees even if the original court found Section 30.022 unconstitutional.

63.   The above provisions purport to eliminate Plaintiffs' defenses to any claims asserted against it under SB8, and impose all financial risks and burdens of seeking any kind of legal redress on those who are either defendants in an SB8 civil suit, or claimants seeking a ruling that SB8 (or other abortion-regulating statutes) are invalid.

64.   Indeed, Section 30.022 even attempts to rob litigants of willing attorneys by creating joint and several liability for lawyers and firms who take up nonfrivolous but ultimately unsuccessful challenges to SB8 (or other abortion laws) on behalf of their clients.  The transparent design of this scheme is to dissuade litigants from challenging the constitutionality of SB8, and if the litigants cannot be dissuaded, to make it difficult or impossible for them to find attorneys.

65.   Since this stricture only applies to challenges to abortion statutes, its restraints are discriminatory and content based, triggering strict scrutiny.  This discrimination also violates the equal protection guarantees of the U.S. Constitution, since it treats litigants challenging the constitutionality of certain laws dramatically differently from litigants challenging the constitutionality of other laws—a tax, essentially, on political opinion.  Such a provision, which would only serve to insulate controversial laws from constitutional review, cannot possibly have a legitimate, much less a compelling, government purpose.

66.   The provisions listed in paragraph 61 also require judges to issue a mandatory injunction sufficient to prevent future conduct if a claimant prevails on his SB8 claim.  A mandatory injunction removes all discretion from the trial judge to determine the appropriate relief

and subjects a defendant to a civil injunction that will operate as a restraint on the defendant's future work and speech.

67.     Even if attorneys would not be immediately dissuaded by the threat of joint and several liability, the above provisions create an automatic conflict between the Plaintiffs, as would-be defendants under SB8, and their attorneys.  As noted, an attorney who agrees to present a constitutional defense or mount a proactive challenge to the constitutionality of SB8 subjects herself and her firm to joint and several liability for the attorneys' fees incurred by the opposing party in the case.  The provisions listed in paragraph 61 force an attorney to choose between the best interests of her client and liability under SB8 or to refuse to represent a client at all, and could cause an attorney to levy only narrow and certain affirmative constitutional challenges when other nonfrivolous challenges are possible in order to avoid being liable for a mandatory fee award. Again, the goal and effect is to deprive litigants with nonfrivolous constitutional claims of effective counsel.

> **(ii)     SB8, and any threats of enforcement by AFLF, violate Plaintiffs' due process rights not to be subject to unpredictable liability under laws so vague they are constitutionally void.**

68.     SB8 is also void for vagueness, which also violates the basic federal due process of law requirement that a person must have notice of what conduct is permitted and what is forbidden to be penalized in law.

69.     SB8 is a quasi-criminal statute that imposes civil penalties.

70.     SB8 is too vague for the average citizen to determine what persons are regulated, what conduct is prohibited, and what penalties may be imposed.

71.     SB8 is also void for vagueness because it imposes on Plaintiffs' rights to freedom of speech, and assembly with the breadth of its prohibition against "aiding" or "abetting" a person seeking an abortion.

72.     SB8 burdens Plaintiffs by depriving them of their constitutional right to be apprised of laws they may be held liable for and by impairing their ability to redress and assert their rights in defense.

73.     Because SB8 violates Plaintiffs' due process rights, it cannot be enforced.

74.     And because any potential lawsuit by Defendant would rely upon these void provisions, a declaration that these provisions are void would define the legal relations between the parties and resolve the parties' dispute.

> ***(iii)    SB8, and the threat of enforcement by AFLF, violates Plaintiffs' due process rights against retroactive laws.***

75.     The basis of AFLF's present enforcement threat is a set of actions Plaintiffs testified they took during a period when enforcement of SB8 was enjoined by a federal court, and thus had no legal effect.  Yet AFLF threatens to retroactively enforce the provisions of SB8 that had been enjoined.

76.     Federal due process guarantees prevent the retroactive application of a law or holding where a potential defendant would not have fair warning that the alleged conduct was prohibited.

77.     The following provisions of SB8 impair prior and settled rights and reliance interests, which violates these federal and state constitutional guarantees:

a.   Section 171.208(e)'s elimination of defenses to liability; and

b.   Section 30.022's imposition of joint and several liability on attorneys or law firms that represent or defend clients in matters that seek injunctive or declaratory relief regarding abortion regulations and statutes.

78.     These provisions are not reasonably tailored to the alleged purposes of SB8.

79.     The retroactive reach of SB8 and its fee shifting provisions burdens Plaintiffs by depriving them of their constitutional right to be apprised of laws they may be held liable for and by impairing their abilities to redress their rights in defense.

> *(iv)     SB8, and AFLF's threats of enforcement, violate Plaintiffs' due process rights by impairing their ability to rely on court orders and injunctions.*

80.     The basis of AFLF's present enforcement threat is a set of actions Plaintiffs testified they took during a period when enforcement of SB8 was enjoined by a federal court. Plaintiffs have a justifiable reliance interest in continuing their regular work when an unconstitutional law has been enjoined.  It would be violative of federal due process for Plaintiffs to be subjected to liability for conduct that was—at the time the conduct occurred—completely legal according to the ruling of the only court to have (at that time) had the question presented to it.

**Claim II:**          **SB8, And AFLF's Threats Of Enforcement, Violate Plaintiffs' Rights To Equal Protection Under The Law.**

81.     The allegations in paragraphs 1 through 80 above are incorporated as if fully set forth herein.

82.     The Equal Protection Clause requires that no State deny to any person within its jurisdiction the equal protection of the laws, which is a direction that all persons similarly situated must be treated alike.

83.     SB8 singles out Plaintiffs (and others) who "aid or abet" abortion or intend to do these things, and then treats that category of people differently from all other defendants in civil litigation.

84.     SB8 alters virtually all of the procedural rules that apply in civil litigation and limits the substantive defenses and arguments available to SB8 defendants.  SB8 even goes so far as to mandate that SB8 defendants be treated differently in the courts of the United States, with special, extremely disadvantageous rules and barriers to relief and defenses applicable only to them.  The

venue and fee-shifting provisions, the conferral of standing without injury, the elimination of standard defenses, and the redefinition of federal due process protections all work together to disadvantage a single subset of citizens—those who advocate for and help pregnant patients access abortion healthcare.

85.     SB8's transparent purpose is animus and to burden the exercise of constitutional rights, which are not legitimate government interests.  Nor are SB8's provisions narrowly tailored to achieve any legitimate goal, even assuming one exists.  The enforcement provisions therefore cannot survive any level of Equal Protection review.

**Claim III:**     **SB8, And AFLF's Threat Of Enforcement, Violate Plaintiffs' Constitutional Free Speech Rights.**

86.     The allegations in paragraphs 1 through 85 above are incorporated as if fully set forth herein.

87.     The First Amendment to the U.S. Constitution guarantees its citizens the right to free speech, assembly, association, and petition.  U.S. Const. amend. I.

88.     Section 171.208 of SB8 purports to impose civil liability on anyone who (1) engages in conduct that "aids or abets" the performance or inducement of an abortion in violation of SB8, including by providing a charitable donation to defray the cost of that abortion or (2) *even intends* to engage in such conduct. *See* Tex. Health & Safety Code Ann. § 171.208(a).

89.     These terms purport to make the following actions violations of law: (1) providing information about how to obtain an abortion; (2) paying for any portion of an abortion; (3) driving a person to an abortion provider; (4) advocating for a person seeking an abortion; and (5) providing childcare to a person seeking an abortion.  Liability even attaches if the SB8 defendant merely "intend[s]" to do any of the above.  *See id.* at § 171.208(a)(3).  This is not an all-inclusive list of actions that may violate the terms of SB8; the conduct merely has to be construed as "aid" or

assistance. The liability attaches "regardless of whether the person knew or should have known that the abortion would be performed or induced in violation of this subchapter." *Id.* at § 171.208(b).

90.     SB8's provisions therefore impose civil liability on Plaintiffs because of the content of their speech and even their intentions regarding their speech, and this restraint is not neutral. Only speech and associative acts that assist or educate people seeking abortion services are forbidden and punished.

91.     Such imposition of liability on the content of Plaintiffs' speech infringes on their free speech rights to discuss matters of public concern without previous restraint or fear of subsequent punishment.

92.     Moreover, because Plaintiffs' use of funds is considered political speech, banning the use of such funds on the basis of their intended purpose is a violation of Plaintiffs' free speech rights.

93.     Given the breadth of civil liability imposed by the law, SB8 presently chills speech, and Plaintiffs are presently under threat from AFLF *precisely for* speech acts that Plaintiffs have undertaken, including providing funding and other assistance to pregnant Texans seeking abortions after cardiac activity can be detected.

94.     Consequently, Section 171.208 of the Texas Health & Safety Code is facially unconstitutional with regard to the free speech guarantees of the U.S. Constitution, contains content-based restrictions that are subject to strict scrutiny, and is retaliatory in that it provides bounty-hunting litigants the ability to seek damages for protected speech acts with which they disagree. SB8's provisions are also unconstitutional as applied to the legal dispute between Plaintiffs and AFLF.

**Claim IV:**      **SB8 Attempts To Confer Standing In An Unconstitutional Manner, And AFLF Lacks Constitutional Standing To Bring Any Lawsuit Against Plaintiffs Under SB8.**

95.      The allegations in paragraphs 1 through 94 above are incorporated as if fully set forth herein.

96.      An SB8 claim cannot constitutionally be brought in any court—whether federal or state—because no SB8 claimant has the requisite injury for constitutional standing under either Article III of the United States Constitution (for federal courts) or the Open Courts provision of the Texas Constitution (for Texas State courts).  Judge Peeples already reached this conclusion with respect to Texas courts, *see* Ex. K at 29-36, and the same result is required in the federal courts.

97.      SB8 purports to deputize private citizens to enforce the law, allowing "any person" other than government officials to bring a civil lawsuit against anyone who provides an abortion in violation of SB8, "aid or abets" such an abortion, or intends to do these things.

98.      SB8 purports to confer standing to a broad group and does not require damages or injury for such private citizens to bring the claim—the private citizen need not show damages or injury.

99.      Such broad standing violates the U.S. Constitution because the claimants are not personally injured and cannot demonstrate an injury sufficient under Article III.

100.      Qui tam actions are sometimes used in order to deputize private individuals to act for and on behalf of the government when the government is injured financially.  Here, the state could not enforce the abortion restrictions as drafted in SB8, and thus cannot abdicate authority it does not have to a private individual—the law specifically prohibits public enforcement.  Likewise, there is no financial injury to confer on a the private enforcer.

101.   Nor can the Texas Legislature set a lower standard than that set by the general doctrine of standing for federal courts.

102.   The broad standing purportedly conferred by SB8 inflicts imminent harm upon the Plaintiffs because it is the only means by which civil enforcers—like Defendant and those with whom they conspire—are even able to threaten litigation against Plaintiffs.

**Claim V:**          **SB8's Provisions Are Preempted By Federal Law.**

103.   The allegations in paragraphs 1 through 102 above are incorporated as if fully set forth herein.

104.   A Texas MDL court has already found that the provisions of SB8, in particular its civil enforcement mechanism and its mandatory minimum (but potentially unlimited) damages provision, are unconstitutional in that they usurp the roles of the Texas Executive Branch on the one hand and the Texas Judiciary on the other. *See* Ex. K at 40-46.  SB8 certainly violates the separation of powers with respect to the *Texas* Constitution.  It also violates the principles of federalism with respect to federal procedure by purporting to limit the power of federal courts hearing cases related to SB8 and by imposing a fee shifting regime in civil rights cases that conflicts with federal law.

105.   Section 30.022 purports to prevent courts—even federal courts—from binding the parties before them by providing that the guaranteed windfall fee award to those opposing challenges to Texas abortion statutes can be pursued later, in a more friendly court, even if not raised during the original litigation, for up to three years, ***even if*** the original court found that fee provision to be unconstitutional or invalid, "notwithstanding" issue and claim preclusion.  The Supremacy Clause, and indeed our federal system, could not survive if a State Legislature could so lightly disarm the federal guards of federal rights.

106.    SB8 in fact *intends* to undo the power of federal courts to bindingly construe the federal constitution and federal statutes, and intends for Texas state courts to ignore federal declarations, boldly declaring that "A judicial injunction or declaration of unconstitutionality … is nothing more than an edict prohibiting enforcement that may subsequently be vacated by a later court if that court has a different understanding of the requirements of the Texas Constitution or United States Constitution." TEX. HEALTH & SAFETY CODE ANN. § 171.212. This flagrant disregard for the supremacy of federal courts in the interpretation of the federal constitution damages not only the concept of federalism but the power of courts in general and the idea of constitutional government.

107.    According to S.B. 8, no court may consider whether the court in the underlying case already denied fees to the party defending the abortion restriction, or already considered the application of S.B. 8 Section 4 and held it "invalid, unconstitutional, or preempted by federal law." *Id.* § 30.022(d)(3). Nor does S.B. 8 explicitly limit fees to what is reasonable, unlike other fee-shifting statutes such as 42 U.S.C. § 1988.

108.    The fee provisions of SB8 also purport to apply in state and federal court, and to any state or federal claim, including Section 1983 claims brought to vindicate federal constitutional rights. But there is already a comprehensive fee-shifting statute for such claims: 42. U.S.C. § 1988. The fee-shifting scheme set forth in SB8 is therefore preempted by 42 U.S.C. § 1988.

109.    Indeed, each and every alteration in defenses or procedure imposed by SB8, to the extent it is construed to apply in federal court, is preempted by the relevant federal statutes, regulations, and rules of procedure that govern federal practice, and should be declared unconstitutional under the Supremacy Clause.

## PLAINTIFFS ARE ENTITLED TO DECLARATORY JUDGMENT

110.    The allegations in paragraphs 1 through 109 above are incorporated as if fully set forth herein.

111.    The Declaratory Judgment Act has, since its inception, provided a mechanism for relief in situations where a litigant might otherwise have to subject themselves to coercive action or looming litigation, in order to secure constitutional or legal rights before irreparable harm occurs. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 243 (1937) (finding the federal courts had jurisdiction over insurer's declaratory judgment cause of action where, had the insured sued in contract, it was clear that the controversy would have been justiciable).

112.    Put another way, Plaintiffs' request for declaratory judgment is the mirror image of Defendant's imminent threat to sue or to organize others to sue Plaintiffs under SB8.  This type of action is squarely within the ambit the Declaratory Judgment Act.  *Haworth*, 300 U.S. 277 at 244 ("Our conclusion is that the complaint presented a controversy to which the judicial power extends and that authority to hear and determine it has been conferred upon the District Court by the Declaratory Judgment Act.").  It is also consistent with the underlying purpose of the Declaratory Judgment Act to enable a court to "decide cases in their incipiency before the law's coercive machinery is brought into play." *Kristensen v. McGrath*, 179 F.2d 796, 801 (D.C. Cir. 1949), *aff'd*, 340 U.S. 162 (1950).  Plaintiffs seek a declaratory judgment to settle the question of their constitutional rights to be free of liability for legal conduct. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

113.    The U.S. Supreme Court recognizes that private parties and private legal relations may be just as coercive as the government. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007) (not requiring patent licensee to terminate patent license agreement before seeking declaratory judgment that the underlying patent was invalid). The Supreme Court justified its decision in *Medimmune* by referencing its own jurisprudence on pre-enforcement and pre-violation challenges to unconstitutional statutes, explaining:

> Our analysis must begin with the recognition that, where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction… Likewise, in *Steffel v. Thompson*, we did not require the plaintiff to proceed to distribute handbills and risk actual prosecution before he could seek a declaratory judgment regarding the constitutionality of a state statute prohibiting such distribution. As then-Justice Rehnquist put it in his concurrence, "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity." In each of these cases, the plaintiff had eliminated the imminent threat of harm by simply not doing what he claimed the right to do (enter into a lease, or distribute handbills at the shopping center). That did not preclude subject-matter jurisdiction because the threat-eliminating behavior was effectively coerced. The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.

*Id.* at 128-29 (internal citations and quotations omitted).

114.    The *MedImmune* case made clear that a viable case or controversy supporting jurisdiction lies between private parties when the impact on the plaintiff is coercive and threatens their legal rights, and that the plaintiff is not required to subject itself to enforcement or litigation risk before seeking declaratory judgment. Here, Plaintiffs' constitutional rights are endangered by the threatened conduct of the private parties, just as they would have been if the state of Texas itself were the enforcer of SB8.

115.    Based on the allegations above, Plaintiffs and Plaintiffs' staff, volunteers, and donors are under an imminent threat to be sued under SB8 by AFLF and those with whom AFLF is coordinating.  AFLF has directly threatened litigation and is presently using pre-suit discovery tools to determine how broad to make its eventual lawsuit and how many of Plaintiffs' staff, volunteers, and donors to include as defendants.  But SB8, and SB8's civil enforcement mechanism in particular, is unconstitutional.  Plaintiffs therefore petition this Court to use its authority under 28 U.S.C. § 2201 and Rule 57 to make declarations declaring the rights of the parties, and declaring the state of their legal relations, specifically as those rights and relations relate to the federal constitutionality of SB8's civil enforcement mechanism, for the reasons given above.

116.    The declarations Plaintiffs request will redress the imminent injury threatening Plaintiffs because if SB8's civil enforcement mechanism is declared unconstitutional and void, AFLF is without power to threaten Plaintiffs with suit under SB8.

### PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION

117.    The allegations in paragraphs 1 through 116 above are incorporated as if fully set forth herein.

118.    SB8 operates unconstitutionally for any or all the reasons described above.

119.    Pursuant to this Court's equitable powers and Federal Rule of Civil Procedure 65, Plaintiffs are entitled to injunctive relief against AFLF because AFLF's threatened actions against them under an unconstitutional law for constitutionally-protected conduct would irreparably damage Plaintiffs.

120.    Plaintiffs will suffer immediate and irreparable harm if AFLF is not enjoined from organizing and planning to bring lawsuits against Plaintiffs.  As set forth above, the legal threat AFLF poses is imminent.  Given AFLF's stated intent to investigate staff and donors, the potential total liability at issue is conceivably unlimited and the possible litigation enormous and complex.

Plaintiffs will be irreparably harmed if AFLF is not enjoined before a suit is filed, and the longer any such litigation lasts the greater the irreparable harm will become.

121.    Plaintiffs are likely to prevail on the merits of this case and receive the requested declaratory judgment, as well as equitable relief, attorneys' fees, and costs of court.  Plaintiffs' case is purely legal, and the provisions of SB8 that Plaintiffs have challenged are clearly unconstitutional.

122.    Plaintiffs also have no adequate remedy at law for AFLF's threatened actions. Specifically, money damages are insufficient to undo the threatened injury to Plaintiffs.  Several of Plaintiffs' constitutional rights are at stake and would continue to be irreparably harmed by the continuing threat of multiple, complex lawsuits.

123.    The threatened injury to Plaintiffs outweighs any possible damages to Defendant Indeed, AFLF is not harmed by Plaintiffs' conduct in any sense, nor by their alleged non-compliance with SB8.  Therefore, AFLF would lose absolutely nothing by the issuance of an injunction.

### ATTORNEYS' FEES

124.    The allegations in paragraphs 1 through 123 above are incorporated as if fully set forth herein

125.    Plaintiffs specifically request the recovery of costs and reasonable attorney fees under 42 U.S.C. § 1988 when they prevail on their federal constitutional claims under 42 U.S.C. § 1983 in this litigation.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs North Texas Equal Access Fund and Lilith Fund for Reproductive Equity respectfully pray for the following relief:

1.    Preliminary and permanent injunctions—

(a) Restraining, enjoining, and prohibiting AFLF and all persons acting on behalf of or in concert with AFLF from filing any lawsuit against Plaintiff North Texas Equal Access Fund, or any of North Texas Equal Access Fund's staff, volunteers, or donors, under the provisions of SB8;

(b) Restraining, enjoining, and prohibiting AFLF and all persons acting on behalf of or in concert with AFLF from filing any lawsuit against Plaintiff Lilith Fund for Reproductive Equity, or any of Lilith Fund for Reproductive Equity's staff, volunteers, or donors, under the provisions of SB8;

(c) Restraining, enjoining, and prohibiting AFLF from coordinating or otherwise assisting any other persons in filing any lawsuit against Plaintiff North Texas Equal Access Fund, or any of North Texas Equal Access Fund's staff, volunteers, or donors, under the provisions of SB8;

(d) Restraining, enjoining, and prohibiting AFLF from coordinating or otherwise assisting any other persons in filing any lawsuit against Plaintiff Lilith Fund for Reproductive Equity, or any of Lilith Fund for Reproductive Equity's staff, volunteers, or donors, under the provisions of SB8;

(e) Restraining, enjoining, and prohibiting AFLF from seeking pre-suit discovery related to any alleged violation of SB8 against Plaintiff North Texas Equal Access Fund, or any of North Texas Equal Access Fund's staff, volunteers, or donors;

(f) Restraining, enjoining, and prohibiting AFLF from seeking pre-suit discovery related to any alleged violation of SB8 against Plaintiff Lilith Fund for

Reproductive Equity, or any of Lilith Fund for Reproductive Equity's staff, volunteers, or donors; and

(g) As otherwise are necessary or produce to accomplish the results that Plaintiffs seek in this Complaint; and

2.     A declaratory judgment—

(a) That SB8 is unconstitutional because it violates Plaintiffs' right to free speech (including the rights to assemble, associate, and petition) under the United States Constitution;

(b) That SB8 is unconstitutional because it violates Plaintiffs' due process of law rights under the United States Constitution in each of the following ways: (i) it violates Plaintiffs' rights to access to fair and impartial courts; (ii) its chief liability provisions are void for vagueness; (iii) it improperly subjects Plaintiffs to retroactive liability under retroactive laws; and/or (iv) it is being used in the present case to attempt to punish Plaintiffs and others for conduct that was legal at the time;

(c) That SB8 is unconstitutional because it violates Plaintiffs' equal protection rights under the United States Constitution;

(d) That SB8 cannot constitutionally confer standing on uninjured parties sufficient to permit cases to be brought under SB8 in federal court;

(e) That SB8 disregards the principles of federalism, and its attempts to control the procedures and power of federal courts are null and void under the Supremacy Clause;

(f) That, for these or other reasons, the following provisions of SB8 are unconstitutional under the United States Constitution: (i) Texas Health & Safety Code Section 171.207(a); (ii) Texas Health & Safety Code Section 171.208(a); (iii) Texas Health & Safety Code Section 171.208(b); (iv) Texas Health & Safety Code Section 171.208(e); (v) Texas Health & Safety Code Section 171.208(f); (vi) Texas Health & Safety Code Section 171.208(g); (vii) Texas Health & Safety Code Section 171.208(h); (viii) Texas Health & Safety Code Section 171.208(i); (ix) Texas Health & Safety Code Section 171.208(j); (x) Texas Health & Safety Code Section 171.209; (xi) Texas Health & Safety Code Section 171.211; (xii) Texas Health & Safety Code Section 171.212; and (xiii) Texas Civil Practice & Remedies Code Section 30.022;

(g) That any claims asserted by AFLF under any provision of SB8 declared to be invalid are themselves invalid and frivolous as a matter of law and have no basis in law;

(h) The recovery of costs and reasonable attorney fees under 42 U.S.C. § 1988; and

(i) Such other and further relief as may be warranted or advisable or the Court may deem just and proper, including, but not limited to, an award to Plaintiffs of costs and attorneys' fees incurred in bringing this action and defending against any and all related appealed and collateral actions as authorized by statute (if any).

Dated: March 16, 2022                    Respectfully submitted,

                                         /s/ Kathleen E. Kraft
                                         Kathleen E. Kraft (D.C. Bar No. 984445)
                                         T: (202) 585-6966
                                         F: (202) 585-6969
                                         email: kkraft@thompsoncoburn.com

                                         THOMPSON COBURN LLP
                                         1909 K Street, N.W., Suite 600
                                         Washington, D.C. 20006-1167
                                         T: (202) 585-6900
                                         F: (202) 585-6969

                                         Counsel for Plaintiffs North Texas Equal Access
                                         Fund and Lilith Fund for Reproductive Equity