UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**North Texas Equal Access Fund**;
**Lilith Fund For Reproductive Equity**,

                    Plaintiffs,

v.

**America First Legal Foundation**,

                    Defendant.

Case No. 1:22-cv-00728-ABJ

## MOTION TO DISMISS FOR
## LACK OF SUBJECT-MATTER JURISDICTION

# TABLE OF CONTENTS

Table of contents ................................................................................................... i

Table of authorities ............................................................................................... ii

The Texas abortion laws ....................................................................................... 2

Facts ....................................................................................................................... 5

Summary of argument .......................................................................................... 6

    I.   The plaintiffs lack standing because their injuries are not "fairly traceable" to the conduct of America First Legal ......................................... 8

    II.  The plaintiffs lack standing because their injuries are not fairly traceable to "allegedly unlawful conduct" of America First Legal ............................ 13

    III. The plaintiffs lack standing because their injuries are not "likely" to be redressed by the requested relief ................................................................ 14

    IV. Any Article III case or controversy that might have existed between the plaintiffs and America First Legal is moot .................................................... 15

Conclusion ........................................................................................................... 16

Certificate of service ........................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Brown v. De La Cruz*, 156 S.W.3d 560 (Tex. 2004)................................................. 10

*California v. Texas*, 141 S. Ct. 2104 (2021)....................................................... passim

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ............................................... 8

*Connecticut v. Menillo*, 423 U.S. 9 (1975)............................................................. 4

*June Medical Services LLC v. Russo*, 140 S. Ct. 2103 (2020) ................................. 3

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ............................................................. 3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................ 1, 11, 12, 14

*Mayfield–George v. Texas Rehabilitation Commission*,
  197 F.R.D. 280 (N.D. Tex. 2000) ....................................................................... 5

*New York Times Co. v. United States*,
  403 U.S. 713 (1971) (per curiam) ..................................................................... 16

*Pidgeon v. Turner*, 538 S.W.3d 73 (Tex. 2017)..................................................... 4

*Planned Parenthood of Greater Ohio v. Hodges*,
  917 F.3d 908 (6th Cir. 2019)............................................................................... 4

*Planned Parenthood of Kansas and Mid-Missouri v. Moser*,
  747 F.3d 814 (10th Cir. 2014)............................................................................. 3

*Planned Parenthood of Southeastern Pa. v. Casey*,
  505 U.S. 833 (1992) ............................................................................................ 3

*Roe v. Wade*, 410 U.S. 113 (1973) ......................................................................... 3

*Schneider Granite Co. v. Gast Realty & Investment Co.*,
  245 U.S. 288 (1917) ............................................................................................ 4

*Singleton v. Wulff*, 428 U.S. 106 (1976) ............................................................... 3

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)..................................................... 8

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ........................................... 9

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953)........................................ 15

*Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988)........................ 9

*Virginia v. Hicks*, 539 U.S. 113 (2003).................................................................. 4

*Warth v. Seldin*, 42 U.S. 490 (1975) ..................................................................... 9

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ....................................................... 9

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) ..................................... 4

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ..................... 2, 10, 13, 14

**Statutes**

Senate Bill 8, 87th Leg., § 2 ................................................................. 2

Tex. Gov't Code § 311.032(c) .............................................................. 4

Tex. Gov't Code § 311.036(c) .............................................................. 4

Tex. Health & Safety Code § 171.207 ................................................. 2

Tex. Health & Safety Code § 171.208(j) .............................................. 2

Tex. Health & Safety Code § 171.210 .................................................. 9

Tex. Penal Code § 7.03(2) .................................................................... 4

West's Texas Civil Statutes, article 4512.2 (1974) ............................. 2

West's Texas Civil Statutes, article 4512.6 (1974) ............................. 2

The plaintiffs' claims against America First Legal are barred by Article III for four separate and independent reasons.

First, the injuries that the plaintiffs allege are not "fairly traceable" to the conduct of America First Legal. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he injury has to be fairly . . . traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (cleaned up)).

Second, the injuries that the plaintiffs allege are not traceable to "allegedly unlawful conduct" of America First Legal. *See California v. Texas*, 141 S. Ct. 2104, 2113 (2021) ("A plaintiff has standing only if he can allege personal injury fairly traceable to the defendant's *allegedly unlawful conduct* and likely to be redressed by the requested relief." (emphasis added) (citation and internal quotation marks omitted)).

Third, the injuries that the plaintiffs allege are not "likely" to be redressed by declaratory or injunctive relief against America First Legal. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " (citation omitted)).

Fourth, any case or controversy that might have existed between the plaintiffs and the defendant is moot because Ms. Maxwell and Ms. Weldon have terminated America First Legal as their legal representative in the Rule 202 proceedings and will not retain them in any future legal action. *See* Hamilton Decl. at ¶¶ 7–11 (attached as Exhibit 5); Maxwell Decl. at ¶¶ 6–9 (attached as Exhibit 6); Weldon Decl. ¶¶ 6–9 (attached as Exhibit 7).

Each of these obstacles, standing alone, warrants dismissal of the complaint.

## THE TEXAS ABORTION LAWS

The law of Texas restricts abortion in numerous ways. The Texas Heartbeat Act, also known as Senate Bill 8 or SB 8, prohibits abortion after a fetal heartbeat is detectable and authorizes private civil-enforcement suits against anyone who performs or "aids or abets" a post-heartbeat abortion. *See* Senate Bill 8, 87th Leg. (attached as Exhibit 1). SB 8 prohibits enforcement by public officials and leaves enforcement entirely in the hands of private citizens, which has frustrated efforts to obtain pre-enforcement relief against the statute's enforcement. *See* Tex. Health & Safety Code § 171.207; *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021). Anyone who violates SB 8 can be sued by "any person"[1] and ordered to pay at least $10,000 in statutory damages for each post-heartbeat abortion that they performed or facilitated, plus costs and attorneys' fees. Senate Bill 8 took effect on September 1, 2021, and it has remained in effect since that time.

The law of Texas also imposes felony criminal liability on anyone who "furnishes the means for procuring an abortion knowing the purpose intended"—regardless of whether the abortion occurs before or after a fetal heartbeat is detectable. *See* West's Texas Civil Statutes, article 4512.2 (1974) (attached as Exhibit 2).[2] Violations of article 4512.2 are punishable by two to five years imprisonment per abortion, and the statute of limitations is three years.[3] The State of Texas has never repealed this statute, and the legislature re-affirmed the continuing vitality of article 4512.2 when it enacted Senate Bill 8 last year. *See* Senate Bill 8, 87th Leg., § 2 (attached as Exhibit 1).

---

1. Except Texas government officials and individuals who impregnated the mother of the unborn child through rape or some other illegal act. *See* Tex. Health & Safety Code §§ 171.208(a); 171.208(j).
2. The full text of the statute says: "Whoever furnishes the means for procuring an abortion knowing the purpose intended is guilty as an accomplice." West's Texas Civil Statutes, article 4512.2 (1974).
3. The only exception is for abortions "procured or attempted by medical advice for the purpose of saving the life of the mother." West's Texas Civil Statutes, article 4512.6 (1974).

The Supreme Court's decisions in *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992), prevent Texas officials from enforcing article 4512.2 (and other provisions of the state's criminal abortion statutes) against abortion providers. But there is no constitutional obstacle to enforcing article 4512.2 against abortion funds and their donors, even while *Roe* and *Casey* remain on the books. Abortion funds and their donors do not have standing to assert the third-party rights of women seeking abortions as a defense to criminal prosecution. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("A party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (citation omitted)).[4] And in all events, a woman seeking an abortion has no constitutional right to have other people pay for it, *see Harris v. McRae*, 448 U.S. 297, 325 (1980), so no abortion patient will suffer an "undue burden" if abortion funds and their donors are prosecuted for violating article 4512.2.[5] There is also no constitutional right to perform or pay for another person's abortion; that is why abortion providers who challenge abortion regulations must invoke the third-party rights of their patients rather than assert their own constitutional rights. *See, e.g., Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d

---

4.  The Supreme Court has allowed abortion doctors and abortion providers to assert the third-party rights of abortion patients, but no court has ever held that an abortion fund (or a donor to such a fund) has the necessary "close relation" needed to establish third-party standing. *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 117 (1976) (plurality opinion) (allowing *physicians* to assert third-party rights of their patients seeking abortions on account of the "patent" "closeness of the relationship"); *June Medical Services LLC v. Russo*, 140 S. Ct. 2103, 2118 (2020) (plurality opinion) ("We have long permitted abortion *providers* to invoke the rights of their actual or potential patients in challenges to abortion-related regulations." (emphasis added)).

5.  *See also Planned Parenthood of Kansas and Mid-Missouri v. Moser*, 747 F.3d 814, 826 (10th Cir. 2014) ("There is a qualitative difference between prohibiting an activity and refusing to subsidize it. The Supreme Court, for instance, has drawn that line in rejecting state laws prohibiting certain abortions but not laws refusing to provide funds for the practice.").

908, 912 (6th Cir. 2019) (en banc) ("The Supreme Court has never identified a free-standing right to perform abortions. To the contrary, it has indicated that there is no such thing."). Nor will the abortionist's immunity from prosecution on account of *Roe* preclude the imposition of accomplice liability on abortion funds and others who violate section 4512.2. *See* Tex. Penal Code § 7.03(2).

Yet abortion funds in Texas flout article 4512.2 with impunity, apparently un-aware of its continued existence, or perhaps laboring under a belief that article 4512.2 was somehow "struck down" by the Supreme Court in *Roe v. Wade*, 410 U.S. 113 (1973). But courts do not have the ability or the authority to "strike down" or for-mally revoke statutes when pronouncing them unconstitutional. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017) ("We note that neither the Supreme Court in *Obergefell* nor the Fifth Circuit in *De Leon* 'struck down' any Texas law. When a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it"). More importantly, the severability provisions in Texas law preserve all constitutional applications of the state's pre-*Roe* abortion stat-utes, allowing them to be enforced in situations that do not violate the constitutional rights of abortion patients. *See* Tex. Gov't Code § 311.032(c); Tex. Gov't Code § 311.036(c); *Virginia v. Hicks*, 539 U.S. 113, 121 (2003) ("Severab[ility] is of course a matter of state law."); *Schneider Granite Co. v. Gast Realty & Investment Co.*, 245 U.S. 288, 290 (1917) ("[T]he severability of a statute of the state . . . is a ques-tion of state law."); *see also Connecticut v. Menillo*, 423 U.S. 9, 9–10 (1975) (allowing Connecticut to enforce its pre-*Roe* criminal abortion statutes against non-physician abortions). So article 4512.2 remains fully enforceable against abortion funds that pay for abortions performed in Texas, as well as their donors, despite the continued exist-ence of *Roe* and *Casey*.

## FACTS

Each of the plaintiffs has violated Senate Bill 8 and article 4512.2, and in doing so they have exposed their employees, volunteers, and donors to private civil-enforcement suits and felony criminal prosecution. Kamyon Conner, the executive director of the North Texas Equal Access Fund, has executed a sworn declaration acknowledging that the TEA Fund paid for "at least one" post-heartbeat abortion in October of 2021. *See* Exhibit 3. Neesha Davé, the deputy director of the Lilith Fund, made a similar admission in a sworn declaration. *See* Exhibit 4. And each of the plaintiffs admits on its website that it pays for abortions performed in Texas[6]—in defiance of article 4512.2, which imposes felony criminal liability on anyone who "furnishes the means for procuring an abortion knowing the purpose intended."

In response to the plaintiffs' admitted violations of Senate Bill 8 and article 4512.2, Ashley Maxwell filed a Rule 202 petition in Texas state court against Kamyon Conner, seeking to depose Ms. Conner and discover information about the North Texas Equal Access Fund's employees, volunteers, and donors—all of whom could be held liable under SB 8 or prosecuted under article 4512.2. *See* Complaint, ECF No. 1 at ¶ 27, Exhibit C to Complaint, ECF No. 1-3. Sadie Weldon filed a similar Rule 202 petition against Neesha Davé in an attempt to discover similar information from the Lilith Fund. *See* Complaint, ECF No. 1 at ¶ 27, Exhibit B to Complaint, ECF No. 1-2. A Rule 202 petition is not a lawsuit, but a mere request for pre-suit discovery. *See Mayfield–George v. Texas Rehabilitation Commission*, 197 F.R.D. 280, 283–84 (N.D. Tex. 2000) (holding that a Rule 202 proceeding was not a "civil action" because "it asserts no claim or cause of action upon which relief may be granted"

---

6. *See* https://www.lilithfund.org/portfolio/about ("We provide financial assistance and emotional support while building community spaces for people who need abortions in Texas—unapologetically, with compassion and conviction.") (last visited on April 22, 2022); http://www.teafund.org ("Texas Equal Access Fund provides emotional and financial support to people who are seeking abortion") (last visited on April 22, 2022).

and that "[i]t is merely a petition for an order authorizing the taking of a deposition"). Neither Ms. Maxwell nor Ms. Weldon has sued the plaintiffs (or anyone else) under SB 8, nor have they threatened to sue the plaintiffs under SB 8's private civil-enforcement mechanism.

When Maxwell and Weldon filed their Rule 202 petitions, they were represented by eight different attorneys, including an attorney from America First Legal. *See* Exhibits B–C to Complaint, ECF Nos. 1-2 and 1-3. But Maxwell and Weldon terminated America First Legal as their legal representative in early April, after this lawsuit was filed. *See* Hamilton Decl. at ¶¶ 7–11; Maxwell Decl. at ¶¶ 6–9; Weldon Decl. ¶¶ 6–9. America First Legal is no longer representing Maxwell or Weldon, and it has no clients who are suing (or intend to sue) the plaintiffs under SB 8 or who wish to initiate Rule 202 proceedings against the plaintiffs. *See* Hamilton Decl. at ¶¶ 12–16.

## SUMMARY OF ARGUMENT

The plaintiffs are understandably concerned about the potential civil and criminal liability that they are facing for their admitted violations of SB 8 and article 4512.2. But they have sued the wrong defendant. There is no Article III case or controversy between the plaintiffs and America First Legal, and the case should be dismissed for lack of Article III standing.

The plaintiffs are suffering three injuries on account of their decisions to violate the Texas abortion laws. First, they have exposed themselves (and their employees, volunteers, and donors) to private civil-enforcement lawsuits under the Texas Heartbeat Act, because each of the plaintiffs has admitted to paying for at least one postheartbeat abortion in violation of SB 8. Second, the plaintiffs have exposed themselves (and their employees, volunteers, and donors) to potential criminal prosecution under article 4512.2, which imposes felony criminal liability on anyone who "furnishes the means for procuring an abortion knowing the purpose intended," regardless of

whether the abortion is performed before or after a fetal heartbeat is detectable. Third, each of the plaintiffs is facing a Rule 202 petition that was filed in response to their admitted violations of SB 8, which seeks discovery that could expose additional violations of Texas law, as well as the identity of the plaintiffs' employees, volunteers, and donors who were complicit in violations of SB 8 and article 4512.2.

But none of these injuries can establish Article III standing because they are not "fairly traceable" to "allegedly unlawful conduct" of America First Legal. The threat of private civil liability is not "fairly traceable" to America First Legal because America First Legal has no intention of suing the plaintiffs under the Heartbeat Act's private civil-enforcement mechanism, and it never had any such intention. *See* Hamilton Decl. at ¶¶ 14–15. Nor does America First Legal have any intention of providing legal representation to individuals who decide to sue the plaintiffs under SB 8. *See id.* at ¶ 16. The threat of criminal liability under article 4512.2 is not "fairly traceable" to America First Legal because the decision whether to criminally prosecute the plaintiffs and their donors rests entirely with the district attorneys in Texas. And any injuries resulting from the Rule 202 petitions were caused by Ashley Maxwell and Sadie Weldon, not America First Legal, as Ms. Maxwell and Ms. Weldon decided to file those petitions without any advice or input from America First Legal and would have filed those petitions regardless of whether America First Legal had been willing to represent them. *See* Hamilton Decl. at ¶ 6; Maxwell Decl. at ¶ 5; Weldon Decl. at ¶ 5.

The plaintiffs' lawsuit also flunks the "redressability" component of Article III standing, because there is no relief that the plaintiffs can obtain against America First Legal that will remove or in any way reduce the threat of civil and criminal sanctions for the plaintiffs' violations of Texas law. The plaintiffs will remain subject to private civil-enforcement lawsuits filed by "any person" under SB 8 even if this Court enters declaratory or injunctive relief against America First Legal. The plaintiffs will likewise remain subject to felony criminal prosecution under article 4512.2 regardless of

whether America First Legal is any way restrained by a declaratory judgment or injunction from this Court. And the Rule 202 proceedings brought by Ms. Maxwell and Ms. Weldon will continue even if America First Legal is enjoined from representing them. *See* Maxwell Decl. at ¶¶ 10–11; Weldon Decl. at ¶¶ 10–11.

Finally, any Article III case or controversy that might have existed between the plaintiffs and America First Legal is moot because Ms. Maxwell and Ms. Weldon have terminated America First Legal as their legal representative, and America First Legal no longer has any involvement in the Rule 202 proceedings. Nor does America First Legal have any intention of bringing Rule 202 proceedings against the plaintiffs on behalf of other individuals. *See* Hamilton Decl. at ¶¶ 12–13. So even if the Court concludes that the plaintiffs had standing at the outset of the lawsuit, it should still dismiss for lack of subject-matter jurisdiction because there is no conceivable case or controversy that remains between the plaintiffs and the defendant.

## I.   THE PLAINTIFFS LACK STANDING BECAUSE THEIR INJURIES ARE NOT "FAIRLY TRACEABLE" TO THE CONDUCT OF AMERICA FIRST LEGAL

To establish Article III standing, the plaintiffs must allege: (1) An injury in fact, that is (2) "fairly traceable" to the defendant's allegedly unlawful conduct; and (3) "likely to be redressed" by the requested relief. *See California v. Texas*, 141 S. Ct. 2104, 2113 (2021) ("A plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). And their complaint must specifically allege the facts needed to establish each component of Article III standing. *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) ("Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of Article III standing.]" (citation omitted)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs bear

the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm."); *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990) ("The litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements."); *Warth v. Seldin*, 42 U.S. 490, 518 (1975) ("It is the responsibility of the complainant *clearly to allege facts demonstrating that* he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." (emphasis added)).

The plaintiffs are unquestionably suffering injury in fact because their violations of Texas's abortion laws have exposed them to the possibility of private civil-enforcement lawsuits under SB 8 and potential criminal prosecution under article 4512.2 — and they cannot aid or abet abortions in Texas without aggravating the civil and criminal sanctions that will be imposed. *See, e.g.*, *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (an "actual and well-founded fear" of prosecution sufficient to confer injury in fact). But the problem for the plaintiffs is that these injuries are not "fairly traceable" to the conduct of America First Legal. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("If the plaintiff does not claim to have suffered an injury *that the defendant caused* and the court can remedy, there is no case or controversy for the federal court to resolve." (emphasis added) (citation and internal quotation marks omitted)).

America First Legal has no intention of suing the plaintiffs (or anyone else) under SB 8's private civil-enforcement mechanism, and it has never had any such intention. *See* Hamilton Decl. at ¶¶ 14–15. The reason for this is obvious: America First Legal is not a resident or citizen of Texas and it would be unable to take advantage of SB 8's favorable venue rules for in-state residents. *See* Tex. Health & Safety Code § 171.210 (allowing residents of Texas, but not out-of-state residents, to sue in their home counties when bringing civil-enforcement suits); Hamilton Decl. at ¶ 15 ("America First Legal would never serve as the plaintiff in a private civil-enforcement

lawsuit under SB 8 because America First Legal is not a resident or citizen of Texas and would be unable to take advantage of the favorable venue rules established in section 171.210 of the Texas Health and Safety Code."). America First Legal also has no intention providing legal representation to individuals who decide to sue the plaintiffs (or anyone affiliated with the plaintiffs) under SB 8. *See* Hamilton Decl. at ¶ 16 ("America First Legal also has no intention, and has never had any intention, of providing legal representation to plaintiffs who file private civil-enforcement lawsuits against the North Texas Equal Access Fund or the Lilith Fund for Reproductive Equity"). Because America First Legal has forsworn any intention of suing the plaintiffs under SB 8, or providing representation to others who might sue the plaintiffs, it cannot be sued in a pre-enforcement lawsuit that challenges the constitutionality of SB 8's provisions. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 537 (2021) ("In his appeal, Mr. Dickson argues that the petitioners lack standing to sue him because he possesses no intention to file an S.B. 8 suit against them. Mr. Dickson has supplied sworn declarations so attesting. The petitioners do not contest this testimony or ask us to disregard it. Accordingly, on the record before us the petitioners cannot establish 'personal injury fairly traceable to [Mr. Dickson's] allegedly unlawful conduct.'" (citations omitted). America First Legal also lacks any ability to enforce the criminal laws of Texas, so it cannot be sued over the criminal sanctions threatened by article 4512.2. *See Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004) (rejecting private rights of action to enforce criminal statutes). Any civil or criminal liability that the plaintiffs face (or fear) exists independent of America First Legal, which will never sue or prosecute the plaintiffs for their violations of Texas's abortion laws.

The plaintiffs also cannot sue America First Legal over the Rule 202 proceedings that were filed by Ashley Maxwell and Sadie Weldon. Ms. Maxwell and Ms. Weldon decided to file those petitions without advice or input from America First Legal, and they would have filed those petitions regardless of whether America First Legal had

served as their representatives in those proceedings. *See* Hamilton Decl. at ¶ 6; Maxwell Decl. at ¶ 5; Weldon Decl. at ¶ 5. Any "injury" resulting from the Rule 202 petitions is the product of independent actions of third parties not before the Court, and a litigant cannot establish Article III standing when the alleged injury rests on the conduct of independent third-party actors. *See Lujan*, 504 U.S. at 560 ("[T]he injury has to be fairly . . . traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (cleaned up) (citation and internal quotation marks omitted)). It was the decision of Ms. Maxwell and Ms. Weldon to seek pre-suit discovery from the plaintiffs; America First Legal had no part in that decision and became involved only after the decision to file the Rule 202 petitions had been made. *See* Hamilton Decl. at ¶ 6; Maxwell Decl. at ¶ 5; Weldon Decl. at ¶ 5.

The plaintiffs seem to think that they can sue America First Legal by complaining about injuries that arise from the mere *existence* of SB 8 and article 4512.2, but the plaintiffs must allege facts explaining how their injuries are "fairly traceable" to the *conduct* of the defendant that they have sued. *See California v. Texas*, 141 S. Ct. 2104, 2120 (2021) ("[T]he plaintiffs in this suit failed to show a concrete, particularized injury fairly traceable to the defendants' conduct in enforcing the specific statutory provision they attack as unconstitutional."). The plaintiffs are assuredly suffering injury in fact from the provisions of SB 8 and article 4512.2, which threaten them with civil and criminal penalties for their abortion-assistance activities. But none of these injuries are "fairly traceable" to anything that America First Legal is doing. Litigants do not "challenge statutes" when they sue in federal court; they can challenge only the *behavior* of the defendant that has been sued. The Supreme Court made this clear in *California v. Texas*:

> The individual plaintiffs point to the statutory language, which, they
> say, commands them to buy health insurance. Brief for Respondent-

> Cross Petitioner Hurley et al. 19–20. But even if we assume that this pocketbook injury satisfies the injury element of Article III standing, see *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990), the plaintiffs nevertheless fail to satisfy the traceability requirement. Their problem lies in the fact that the statutory provision, while it tells them to obtain that coverage, has no means of enforcement. With the penalty zeroed out, the IRS can no longer seek a penalty from those who fail to comply. See 26 U.S.C. § 5000A(g) (setting out IRS enforcement only of the taxpayer's failure to pay the penalty, *not* of the taxpayer's failure to maintain minimum essential coverage). Because of this, there is no possible Government action that is causally connected to the plaintiffs' injury—the costs of purchasing health insurance. Or to put the matter conversely, that injury is not 'fairly traceable' to any 'allegedly unlawful conduct' of which the plaintiffs complain. *Allen v. Wright*, 468 U.S. 737, 751 (1984). They have not pointed to any way in which the defendants, the Commissioner of Internal Revenue and the Secretary of Health and Human Services, will act to enforce § 5000A(a). They have not shown how any other federal employees could do so either. In a word, they have not shown that any kind of Government action or conduct has caused or will cause the injury they attribute to § 5000A(a).

*California v. Texas*, 141 S. Ct. 2104, 2113–14 (2021). So too here. The plaintiffs are injured by the threats of civil and criminal liability imposed by SB 8 and article 4512.2, in the same way that the plaintiffs in *California* were "injured" by the statutory command to purchase health insurance. But none of those injuries are "fairly traceable" to the conduct of America First Legal, which has disclaimed any intent to sue under SB 8 and has no power to prosecute under article 4512.2. And any injuries imposed by the Rule 202 proceedings were caused by the independent actions of Ms. Maxwell and Ms. Weldon. *See Lujan*, 504 U.S. at 560 ("[T]he injury has to be fairly . . . traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (cleaned up) (citation and internal quotation marks omitted)).

## II.   THE PLAINTIFFS LACK STANDING BECAUSE THEIR INJURIES ARE NOT FAIRLY TRACEABLE TO "ALLEGEDLY UNLAWFUL CONDUCT" OF AMERICA FIRST LEGAL

Even if the plaintiffs could somehow establish a causal connection between their injuries and the conduct of America First Legal, they *still* cannot establish Article III standing because they have not shown an injury caused by America First Legal's "allegedly unlawful" conduct. *See California v. Texas*, 141 S. Ct. 2104, 2113 (2021) ("A plaintiff has standing only if he can allege personal injury fairly traceable to the defendant's *allegedly unlawful conduct*" (emphasis added) (citation and internal quotation marks omitted)); *id.* at 2116 ("[P]laintiffs have similarly failed to show that they have alleged an 'injury fairly traceable to the defendant's allegedly *unlawful* conduct.'" (citation omitted)). The plaintiffs have not alleged that America First Legal did anything *unlawful* by providing legal representation to Ms. Maxwell or Ms. Weldon, and it would be preposterous to suggest that a law firm acts illegally by representing a client in a Rule 202 proceeding. *See* Complaint, ECF No. 1, at ¶¶ 27–34 (complaining about America First Legal's representation of Maxwell and Weldon in the Rule 202 proceedings). Nor have the plaintiffs alleged that America First Legal acted unlawfully by issuing press releases and social-media posts about the plaintiffs' violations of Texas's abortion statutes and warning others of the consequences for violations those laws—all of which is constitutionally protected speech. *See* Complaint, ECF No. 1, at ¶¶ 35–40 (complaining about America First Legal's speech activities). Without a complaint that alleges *unlawful* conduct, the plaintiffs cannot satisfy the "traceability" prong of Article III standing. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 537 (2021) (dismissing claim because "petitioners cannot establish personal injury fairly traceable to [the defendant's] *allegedly unlawful* conduct." (citation and internal quotation marks omitted)).

### III.   The Plaintiffs Lack Standing Because Their Injuries Are Not "Likely" To Be Redressed By The Requested Relief

There is a separate and independent obstacle to the plaintiffs' standing: None of the plaintiffs' injuries are likely to be redressed by declaratory or injunctive relief against America First Legal. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (citation omitted)). Any relief that this Court might issue will be limited to America First Legal—the only named defendant in this case. *See Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021) ("[N]o court may lawfully enjoin the world at large, or purport to enjoin challenged laws themselves" (citations and internal quotation marks omitted)). And relief that is limited to America First Legal will do nothing to redress or alleviate the plaintiffs' alleged injuries.

The injuries from the threat of private civil-enforcement suits will remain because America First Legal never had any intention of suing the plaintiffs under SB 8, and it never had any intention of providing legal representation to clients who sue the plaintiffs under SB 8's private civil-enforcement mechanism. *See* Hamilton Decl. at ¶¶ 14–16. The injuries from the threat of criminal prosecution will remain because a declaratory judgment or injunction against America First Legal does nothing to restrain the district attorneys in Texas who will ultimately decide whether to prosecute the plaintiffs for their violations of article 4512.2. And the injuries from the Rule 202 proceedings will remain because Ms. Maxwell and Ms. Weldon will continue to pursue discovery with their remaining attorneys, even if America First Legal is enjoined from providing legal representation in those proceedings. *See* Maxwell Decl. at ¶ 10–11; Weldon Decl. at ¶ 10–11.

Finally, America First Legal does not have any other clients who intend to bring Rule 202 proceedings against either of the plaintiffs. *See* Hamilton Decl. at ¶ 12. And

America First Legal has no intention of representing other individuals who file Rule 202 petitions against the plaintiffs because it sees no need to bring Rule 202 petitions redundant to those already filed by Ms. Maxwell and Ms. Weldon. *See id.* at ¶ 13.

## IV. ANY ARTICLE III CASE OR CONTROVERSY THAT MIGHT HAVE EXISTED BETWEEN THE PLAINTIFFS AND AMERICA FIRST LEGAL IS MOOT

Even if the Court concludes that the plaintiffs had Article III standing to sue America First Legal when they filed the complaint, any case or controversy is now moot because Ms. Maxwell and Ms. Weldon have terminated America First Legal as their legal representative in the Rule 202 proceedings and will not retain them in any future legal action. *See* Hamilton Decl. at ¶¶ 7–11; Maxwell Decl. at ¶¶ 6–9; Weldon Decl. ¶¶ 6–9. America First Legal did not ask Ms. Maxwell and Ms. Weldon to terminate the attorney–client relationship, and the clients made this decision without input or encouragement from America First Legal. *See* Hamilton Decl. at ¶ 6; Maxwell Decl. at ¶ 8; Weldon Decl. ¶ 8. So the "voluntary cessation" exception to mootness is inapplicable, as the decision was made by the clients and was not the result of voluntary conduct undertaken by the defendant. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot.").

Without America First Legal's involvement in the Rule 202 proceedings, there is no conceivable injury that is "fairly traceable" to the allegedly unlawful conduct of America First Legal. All that the plaintiffs have left to complain about are the social-media postings and press releases[7]—which the plaintiffs do not even allege to be unlawful, and which they do not allege have caused them any Article III injury. Nor are the plaintiffs are seeking relief that would restrain America First Legal from tweeting

---

7. *See* Complaint, ECF No. 1, ¶¶ 35–40.

or speaking about the plaintiffs' violations of Texas's abortion laws and the conse-
quences for violating these abortion statutes, and any such remedy would be a flagrant
violation of the First Amendment. *See New York Times Co. v. United States*, 403 U.S.
713, 714 (1971) (per curiam). The plaintiffs have nothing left of their case now that
Maxwell and Weldon have terminated America First Legal's involvement in the Rule
202 proceedings.

## CONCLUSION

The case should be dismissed for lack of subject-matter jurisdiction.

Respectfully submitted.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: April 22, 2022              *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that on April 22, 2022, I served this document through CM/ECF upon:

Christine Rene Couvillon
Kathleen E. Kraft
Thompson Coburn, LLP
1909 K Street, NW
Suite 600
Washington, DC 20006-1167
(202) 585-6961 (phone)
(202) 585-6969 (fax)
ccouvillon@thompsoncoburn.com
kkraft@thompsoncoburn.com

Elizabeth Myers
Jennifer Ecklund
John P. Atkins
Mackenzie S. Wallace
Thompson Coburn LLP
2100 Ross Avenue
Suite 3200
Dallas, TX 75201
(972) 629-7111 (phone)
(972) 629-7171 (fax)
emyers@thompsoncoburn.com
jecklund@thompsoncoburn.com
jatkins@thompsoncoburn.com
mwallace@thompsoncoburn.com

*Counsel for Plaintiffs*

                          /s/ Jonathan F. Mitchell
                          Jonathan F. Mitchell
                          *Counsel for Defendant*